The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Henry Michael TRUJILLO,
Defendant–Appellant.

No. 01CA0547.

Colorado Court of Appeals,
Div. V.

July 5, 2002.

Rehearing Denied Aug. 15, 2002.

Certiorari Granted Jan. 21, 2003.

Ken Salazar, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Cynthia Camp, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

Defendant, Henry Michael Trujillo, appeals the judgment of conviction entered on jury verdicts finding him guilty of four counts of first degree assault. He also appeals his sentence of fifty-two years imprisonment in the Colorado Department of Corrections. We reverse the judgment, vacate the sentence, and remand for a new trial.

Evidence was presented that several police officers went to a residence the morning of August 7, 1998, to execute a warrant for defendant's arrest. Although the officers identified themselves as police officers and discussed the warrant with defendant, defendant did not come to the door. When an officer kicked open the back door, defendant fired four to six shots from the basement. Defendant eventually surrendered.

Defendant's first trial ended in mistrial. After a second trial, the jury found defendant guilty of the lesser nonincluded offenses of resisting arrest and reckless endangerment, but did not reach a verdict on the four first

degree assault charges. After a third trial, the jury found defendant guilty of four counts of first degree assault, prohibited use of a weapon, and obstructing a police officer. The jury also found that defendant used a semiautomatic weapon during the commission of each assault.

At sentencing, the People moved to dismiss the counts of obstructing a police officer, reckless endangerment, resisting arrest, and prohibited use of a weapon, and the trial court sentenced defendant to a total of fifty-two years in the Department of Corrections based on the four first degree assault convictions.

## I. Jury Instruction

■ Defendant contends that, because his requested instructions encompassed his theory of the case and the evidence supported giving them, the trial court violated his rights to due process by refusing to instruct the jury on the lesser nonincluded offenses of resisting arrest and reckless endangerment. We agree.

■ An instruction that permits the jury to find a defendant not guilty of the principal charge and guilty of a lesser charge should be given when warranted by the evidence. Without such an instruction, the jury may be aware of the commission of a crime, not the principal charge, and yet convict the defendant of the greater crime. *People v. Rivera*, 186 Colo. 24, 525 P.2d 431 (1974), *overruled in part by People v. Lowe*, 660 P.2d 1261 (Colo.1983).

■ Further, an instruction embodying a defendant's theory of the case must be given by the trial court if the record contains any evidence to support the theory. *People v. Nunez*, 841 P.2d 261 (Colo.1992); *People v. Fuller*, 781 P.2d 647 (Colo.1989).

Here, at the conclusion of defendant's second trial, the trial court entered judgment against defendant on the charges of reckless endangerment and resisting arrest but withheld sentencing on those counts.

At the conclusion of his third trial on the first degree assault charges, defendant again requested that the trial court instruct the jury on the lesser nonincluded offenses of resisting arrest and reckless endangerment. The trial court refused the requested instructions, reasoning that to do so would constitute a double jeopardy violation because defendant had already been convicted of those offenses in his second trial. We conclude that the instructions were not barred by double jeopardy concerns.

■ The Double Jeopardy Clauses of the United States and Colorado Constitutions protect an accused from a second prosecution for the same offense after conviction. *People v. Chavez*, 32 P.3d 613 (Colo.App.2001).

■ Under those clauses, the state may not punish a person twice for the same offense. This protection specifically includes guarantees that the accused will not be subject to multiple punishments imposed in the same criminal prosecution for statutory offenses proscribing the same conduct. *Patton v. People*, 35 P.3d 124 (Colo.2001).

■ However, a defendant may waive constitutionally protected rights. A defendant's motion for a mistrial is generally a waiver of protection from retrial under the Double Jeopardy Clause. *See People v. Baca*, 193 Colo. 9, 562 P.2d 411 (1977); *People v. Ball*, 821 P.2d 905 (Colo.App.1991).

Here, defendant sought instructions on the lesser nonincluded offenses, and it is undisputed that sufficient evidence supported them. Further, if defendant were convicted of the lesser nonincluded offenses, the court could avoid multiple convictions and multiple punishments simply by allowing only one conviction for each of these offenses.

Finally, as noted below, the jury here submitted a question to the trial court indicating that it was unable to reach a unanimous decision on the charges of assault in the first degree and asked what its course of action should be. Thus, the court's refusal to instruct the jury on the lesser nonincluded offenses of resisting arrest and reckless endangerment limited the jury's options. As defendant asserts, he was in a less advantageous position than he was during the second trial.

## II. Issues on Remand

Because certain matters may arise on remand, we address them here.

### A. Discovery Costs

■ Defendant contends that the trial court erred by ordering the public defender to deposit $2,145.76 as a prerequisite to requiring production of properly subpoenaed internal affairs records for in camera review and by not performing an in camera review as requested by defendant. We conclude that on remand the court should reconsider its position.

■ A defendant who is charged with assaulting a police officer is entitled to disclosure of the fact that complaints charging excessive use of force have been filed against that officer. *People v. Walker,* 666 P.2d 113 (Colo.1983).

However, the trial court must first conduct an in camera review of the materials to balance the defendant's interest in disclosure of the materials with the government's interest in confidentiality and to determine whether the information in the materials is discoverable. *People v. Walker, supra; Martinelli v. District Court,* 199 Colo. 163, 612 P.2d 1083 (1980).

Here, on defendant's motion, the trial court ordered the police department to produce for the court's examination, inspection, and photocopying, the personnel, internal investigation, and inspection bureau files of the police officers charged as victims in defendant's case.

The city moved to quash or modify the subpoena and requested a denial or regulation of disclosure, alleging that the estimated cost of searching for and photocopying the requested records back to January 1995 would be approximately $2,145.76. The city asserted that it was necessary to provide the court with copies of the requested materials in order that the original records remain available for police department internal use and to avoid the risk that the records might be lost or misplaced.

After reviewing a confidential internal affairs index provided by the city, the trial court issued an order stating that it should review in camera the files designated in the index beginning January 1, 1995, to determine what records might be relevant to the proceedings and should be disclosed to defendant. However, the order also stated that pursuant to Crim. P. 16(V)(c), defendant should be required to pay $2,145.76 for the production of the files. The court found that "[d]efendant is indigent but is represented by the Public Defender who has a budget for discovery" and that the cost of discovery was reasonable.

The public defender did not deposit the money with the trial court, and the court did not conduct an in camera review. Defendant subsequently petitioned the supreme court for relief pursuant to C.A.R. 21, but the petition was denied.

#### 1. Crim. P. 16(V)(c)

Crim. P. 16(V)(c) states in pertinent part that "[t]he cost of duplicating any material discoverable under this rule shall be borne by the party receiving the material, based on the actual cost of copying the same to the party furnishing the material." Defendant does not assert that he was unable to comply with the cost of copying the records. Rather, he asserts that Crim. P. 16(V)(c) applies only to materials that are discoverable and actually received by the requesting party. The People acknowledge that arguably, this provision covers only the cost of copying documents that would be turned over to the defense.

■ Nevertheless, the People point to the open records laws, which regulate the inspection and copying of governmental records by "any person," without limitation as to the reason or reasons for which the inspection is undertaken. *Martinelli v. District Court, supra.* Section 24–72–306(1), C.R.S. 2001, provides that "[c]riminal justice agencies may assess reasonable fees, not to exceed actual costs, including but not limited to personnel and equipment, for the search, retrieval, and copying of criminal justice records and may waive fees at their discretion." However, in our view, the use of "may" in this statute indicates that the assessment is discretionary.

### 2. Crim. P. 17(c)

On remand the trial court should make specific findings regarding whether defendant's subpoena was unreasonable or oppressive and whether the city's proffered concerns as to use and possible loss were justified. The court should consider whether adequate safeguards could be provided for an initial in camera review of the original documents and then limit any payment required to actual costs. In doing so, the court must balance the government's interests against defendant's interests in disclosure. *See Martinelli v. District Court, supra.*

### B. Audio Tape

▪▪▪ Defendant next contends that the trial court erred by not finding that a due process violation occurred and by not imposing more severe sanctions after it found that the state violated Crim. P. 16 by destroying an audio tape of the negotiations between defendant and the police. We disagree.

▪▪▪ To demonstrate that the state's failure to preserve potentially exculpatory evidence violates the Due Process Clause of the United States or Colorado Constitution, a defendant must establish that: (1) the evidence was suppressed or destroyed by the prosecution; (2) the evidence possessed an exculpatory value that was apparent before it was destroyed; and (3) the defendant was unable to obtain comparable evidence by other reasonably available means. *People v. Enriquez,* 763 P.2d 1033 (Colo.1988).

Prior to trial, defendant sought an order directing the prosecution to preserve and provide the defense with the dispatch tapes made by law enforcement and other governmental agencies during the incident. Defendant testified at an evidentiary hearing that during his conversation with the hostage negotiators, he asked, "[H]ow come [the officers] kicked my door in without announcing themselves as police officers?" and stated, "I told [the officers] I didn't have no intention of shooting at any time. I didn't know who was breaking my door in." One of the negotiators testified that during the course of negotiations defendant did not make any ex-

culpatory statements. Another negotiator testified that defendant asked about the warrant.

The trial court found, with record support, a violation of Crim. P. 16, but no due process violation. Even if the prosecution lost the tape and defendant was unable to obtain comparable evidence by other reasonably available means, as the trial court pointed out, the only evidence of exculpatory value was defendant's testimony at the hearing, and the court stated that it was "not convinced that the defendant made the statements he testified to."

Moreover, as a sanction for the discovery violation, the trial court submitted the following instruction to the jury:

> You are instructed that [defendant] has testified under oath at a prior hearing that he made the following statement to [an officer] during the crisis negotiations:
>
> "Why did the police officers kick my door in without announcing themselves as police officers? I told them I didn't have no intention of shooting at any time. I didn't know who was breaking my door in."
>
> As with any other witness' testimony, you may believe all of the statement, part of it, or none of it.

In addition, the court stated that it would permit defendant to elicit testimony that a tape of the negotiations took place and was subsequently lost.

These sanctions allowed defendant, without testifying, to present to the jury the exculpatory evidence. Accordingly, we perceive no abuse of discretion. *See People v. Loggins,* 981 P.2d 630 (Colo.App.1998).

### C. Jury Question

▪▪▪ Although the issue is unlikely to occur on remand, we agree with defendant that the trial court violated his right to counsel under the United States and Colorado Constitutions by failing to inform counsel that the jury had a question and by answering the question without consulting counsel. If a similar circumstance arises on remand, the trial court should follow the mandates of *Key v. People,* 865 P.2d 822 (Colo.1994), and *Leonardo v. People,* 728 P.2d 1252 (Colo.

1986). *See People v. Grace*, 55 P.3d 165 (2001).

In view of our disposition, we do not address defendant's contention that the trial court erred in finding that it was required to impose two consecutive sentences.

The judgment is reversed, the sentence is vacated, and the case is remanded for a new trial.

ROY and STERNBERG *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2001.