**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Henry M. TRUJILLO, Defendant–Appellant.**

**No. 01CA0547.**

Colorado Court of Appeals, Div. V.

July 15, 2004.

Rehearing Denied Oct. 21, 2004.

Certiorari Denied May 31, 2005.

Ken Salazar, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Cynthia Camp, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

This is our second opinion in this appeal by defendant, Henry M. Trujillo, of the judgment of conviction and sentence for four counts of first degree assault. We vacate the judgment and sentence and remand for further proceedings.

As relevant here, a jury found defendant guilty of four counts of first degree assault on a police officer, and the trial court sentenced him to fifty-two years imprisonment.

In our first opinion, *People v. Trujillo*, 62 P.3d 1034 (Colo.App.2002) (*Trujillo I*), we reversed the conviction based on the trial court's failure to instruct the jury on certain lesser nonincluded offenses. However, our decision was reversed by the supreme court in *People v. Trujillo*, 83 P.3d 642 (Colo.2004) (*Trujillo II*). *Trujillo II* addressed only defendant's argument that the trial court improperly disallowed his theory of defense by refusing to give reckless endangerment and resisting arrest instructions. The supreme court concluded that the jury was properly instructed and stated, "we ... return this case for further proceedings consistent with this opinion." *Trujillo II, supra*, 83 P.3d at 648.

On February 2, 2004, defendant requested a specific remand from the supreme court to this court to decide the issues not raised by the People's petition for certiorari. On the

same date, defendant filed a virtually identical request in this court asking for a ruling on the issues that were left outstanding. The supreme court denied defendant's request.

The supreme court then issued its mandate reversing the judgment of this court and returning the case "for further proceedings consistent with this opinion." Because neither the mandate nor *Trujillo II* states what issues, if any, this court is to review, we conclude that that determination is left to our discretion.

In *Trujillo I*, we addressed in part certain issues that could arise on retrial, but did not address the sentencing issue. Defendant's request to this court is that we now decide whether the other trial court errors were reversible and also rule on the sentencing issue. The People agree that certain issues remain unresolved and may be considered now. Thus, we limit our review to the questions of the requirement of a deposit before in camera review of certain records, destruction of the audiotape, defendant's right to counsel upon receipt of a jury question, and defendant's challenge to consecutive sentences.

I.

■ Defendant contends the trial court erred by ordering the public defender to deposit $2,145.76 as a prerequisite to requiring production of properly subpoenaed internal affairs records for in camera review and by not performing an in camera review as requested by defendant. Under the circumstances here, we agree.

■ A defendant who is charged with assaulting a police officer is entitled to disclosure of the fact that complaints charging excessive use of force have been filed against that officer. *People v. Walker*, 666 P.2d 113 (Colo.1983). The supreme court in *Walker* held that the trial court must first conduct an in camera review of the materials and determine what, if any, information contained in the files should be disclosed to the defense in accordance with the standards announced in *Martinelli v. District Court*, 199 Colo. 163, 612 P.2d 1083 (1980). Thus, the trial court

must balance the competing interests of the defendant, the government, and the People. *People v. Walker, supra.*

Here, defendant filed a request for the court to order the police department to produce for the court's examination, inspection and photocopying, the personnel, internal investigation, and inspection bureau files of the police officers named as victims in defendant's case. Defendant requested the internal investigation files of four officers, including all complaints against them for brutality, excessive use of force, unnecessary acts of aggressive behavior, false or illegal arrests, dishonesty, untruthfulness, and ethnic or other types of prejudice.

The city moved to quash or modify the subpoena and requested a denial or regulation of disclosure, alleging that the estimated cost of searching for and photocopying approximately 3,876 pages of records back to January 1995 would be $2,145.76. The city asserted that the records sought were confidential and privileged. It argued it was necessary to provide the court with copies of the requested materials to keep the original records available for police department internal use and to avoid the risk that the records might be lost or misplaced. Thus, it urged the court to require defendant to pay the cost of producing the requested records for in camera inspection. In support, it cited Crim. P. 16(V)(c) and §§ 24–72–205 and 24–72–306, C.R.S.2003.

After reviewing a confidential internal affairs index provided by the city, the trial court ordered that it should review in camera the files designated in the index beginning January 1, 1995, to determine what records might be relevant to the proceedings and should be disclosed to defendant. However, it also ordered that pursuant to Crim. P. 16(V)(c), defendant should be required to pay $2,145.76 for the production of the files. The court found that "[d]efendant is indigent but is represented by the Public Defender who has a budget for discovery" and that the cost of discovery was reasonable.

The public defender did not deposit the money with the trial court, and the court did not conduct an in camera review. Defendant subsequently petitioned the supreme court

for relief pursuant to C.A.R. 21, but the petition was denied.

Defendant does not assert that he was unable to pay the cost of copying the records. Rather, he asserts that Crim. P. 16(V)(c) applies only to materials that are discoverable and actually received by the requesting party. We agree with defendant and conclude that the matter must be remanded for further proceedings.

Crim. P. 16(V)(c) states in pertinent part that "[t]he cost of duplicating any material discoverable under this rule shall be borne by the party receiving the material, based on the actual cost of copying the same to the party furnishing the material."

■ As we read Crim. P. 16(V)(c), the cost is limited to "material discoverable." The rule does not address costs for materials the court determines are not discoverable. Thus, the court must first conduct an in camera review and determine what materials are discoverable before determining the amount of any deposit required of defendant. *See People v. Walker, supra.* Under the circumstances here, defendant was not allowed the opportunity to review the records first and then copy what he selected. Rather, an in camera review was required before defendant could have access to the materials. Thus, any other reading of Crim. P. 16(V)(c) would require defendant to pay for materials he might not be allowed to review.

The record reflects that the court looked only at an index of the documents provided by the city. There is no indication that the court looked at the files or made any estimation of the amount of time it would take to review those documents or whether they could be reviewed in camera and returned to the city within a reasonable period of time.

Accordingly, on remand the trial court must first conduct an in camera review. If the court determines materials are discoverable, then defendant may be assessed the cost of duplicating the discoverable materials, and the trial court must determine whether defendant is entitled to a new trial, subject to the parties' right to appeal. If the trial court determines there is no discoverable material, then the conviction and sentence should be reinstated, subject to defendant's right to appeal that decision.

We are not persuaded that the open and criminal justice records laws, upon which the People rely and which regulate the inspection and copying of governmental records by "any person" without limitation as to the reasons for the inspection, require a different result.

Section 24–72–306(1), C.R.S.2003, provides that "[c]riminal justice agencies may assess reasonable fees, not to exceed actual costs, including but not limited to personnel and equipment, for the search, retrieval, and copying of criminal justice records and may waive fees at their discretion."

The statute can be read in harmony with the requirement of Crim. P. 16(V)(c) so that any costs for search or retrieval are limited to materials discoverable. Thus, an agency is limited to reasonable fees for discoverable materials.

In view of our disposition, we need not address defendant's contentions that the trial court did not follow Crim. P. 17(c) or that it violated his constitutional rights by denying him discovery.

## II.

Defendant next contends that the trial court erred by not finding that a due process violation occurred and by not imposing more severe sanctions after it found that the state violated Crim. P. 16 by destroying an audiotape of the negotiations between defendant and the police. On this issue we reaffirm our prior opinion in part II.B of *Trujillo I* concluding that there was no abuse of discretion.

## III.

■ Defendant asserts that the trial court violated his rights under the United States and Colorado Constitutions by failing to inform counsel that the jury had a question and by answering the question without consulting counsel. In *Trujillo I,* while we agreed with defendant that the trial court violated his right to counsel, it was not a basis upon which we reversed the conviction. We concluded that if a similar circumstance were to arise on retrial, the trial court should

follow the mandates of *Key v. People*, 865 P.2d 822 (Colo.1994), and *Leonardo v. People*, 728 P.2d 1252 (Colo.1986).

Because our decision in *Trujillo I* was reversed, the question before us now is whether the violation of defendant's right to counsel requires reversal. We conclude that any error was harmless beyond a reasonable doubt.

■■■ The defendant in a criminal case has the fundamental right under the Colorado Constitution to have counsel present when the court gives instructions to the jury or responds to questions from the jury. It is constitutional error for the trial court to respond to an inquiry from a jury without first making reasonable efforts to obtain the presence of the defendant's counsel. *Leonardo v. People, supra.*

■■■ In cases of trial error involving the right to counsel, reversal is required unless the appellate court can declare a belief that the error was harmless beyond a reasonable doubt. *Key v. People, supra.* If there is a reasonable possibility that the defendant could have been prejudiced, the error cannot be harmless beyond a reasonable doubt. *Leonardo v. People, supra; see Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). A constitutional error is harmless when the reviewing court is confident beyond a reasonable doubt that the error did not contribute to the verdict. *Griego v. People*, 19 P.3d 1 (Colo.2001).

■■■ If the court has properly responded to a jury's inquiry during deliberations, there is no prejudice and the communication is necessarily harmless beyond a reasonable doubt. *People v. Grace*, 55 P.3d 165 (Colo.App.2001).

Here, the record reflects a written exchange between the court and the jury. A note from the jury and the court's response state:

> We are unable to reach a unanimous decision on the charges of assault in the first degree. What is our course of action? Is there any possibility that further deliberation will help you to make a verdict?
> Judge Maes

1–6–01

2:47 P.M.

> Yes, we will make the effort for today yet until 5:00.
> [name]

The note is stamped January 6, 2001, and the record reflects that a verdict was reached the same day.

Defendant argues that the trial court's response to the jury's question created a risk of coercion on the jury's deliberative process. According to defendant, the jury told the court that it could not reach a verdict, and the court's response ignored the jury's clear statement and encouraged the jury to deliberate further even though it could not agree. We conclude the court's response to the jury was proper.

We first note that the jury's inquiry did not address a particular instruction or the evidence and that the trial court simply responded by asking another question.

■■■ Before giving any additional instruction calculated to avert a mistrial due to a jury disagreement, the court should first ask the jury whether there is a likelihood of progress towards a unanimous verdict upon further deliberation. An affirmative response should require further deliberation without any additional instruction. *People v. Lewis*, 676 P.2d 682 (Colo.1984).

In *People v. Urrutia*, 893 P.2d 1338 (Colo.App.1994), a division of this court considered a trial court's ex parte discussion with the jury to determine the effect, if any, on the defendant's right to a fair trial. The division held that upon receiving information that the jury cannot agree on a unanimous verdict, a trial court may not expressly or impliedly authorize the jury to render a verdict wherein some members sacrifice their sincere opinions merely for the sake of reaching an agreement. The division noted that the trial court had not said anything suggestive of coercion, and it did not indicate that the jurors were under any time limit to reach a consensus or declare a deadlock. Thus, the defendant had not demonstrated how his right to a fair trial was prejudiced by the ex

parte conversation, and that conversation was harmless beyond a reasonable doubt.

Here, the trial court did not encourage the jury to deliberate further even though they could not agree. Rather, the court simply asked the jury whether further deliberations would help, and the jury responded in the affirmative. We do not perceive any suggestion of coercion in the court's response.

Accordingly, there is no reasonable possibility that the trial court's failure to notify defense counsel before responding to the jury's inquiry prejudiced defendant, and therefore any error was harmless beyond a reasonable doubt.

## IV.

Finally, because it may arise on remand, we address and reject defendant's contention that the trial court erred in sentencing him.

## A.

▮ Contrary to defendant's contention, the court properly found that it was required to impose consecutive sentences.

Section 18–1–408(3), C.R.S.2003, provides in pertinent part:

If more than one guilty verdict is returned as to any defendant in a prosecution where multiple counts are tried ... the sentences imposed shall run concurrently; except that, where multiple victims are involved, the court may, within its discretion, impose consecutive sentences.

Section 18–1.3–406(1)(a), C.R.S.2003 (formerly § 16–11–309(1)(a)), provides: "A person convicted of two or more separate crimes of violence arising out of the same incident shall be sentenced for such crimes so that sentences are served consecutively rather than concurrently."

▮ If different evidence is required to establish guilt of each of the multiple offenses, they are separate crimes for purposes of this statute. Thus, when each assault is a separate crime of violence, the statute requires the court to impose consecu-

tive sentences for each offense. *People v. Hahn,* 813 P.2d 782 (Colo.App.1991).

▮ When multiple victims are involved, the court may, within its discretion, impose consecutive sentences. *People v. Laurson,* 15 P.3d 791 (Colo.App.2000); *see People v. Page,* 907 P.2d 624 (Colo.App.1995).

We thus conclude that the court did not err in imposing consecutive sentences. *See People v. Ellis,* 30 P.3d 774 (Colo.App. 2001)(where defendant fired three separate shots, sentences for two counts of attempted first degree extreme indifference murder were properly ordered to run consecutively).

## B.

▮ We also are not persuaded that the court should have sentenced defendant to a single term of five years to be served consecutively to any other sentence, not an additional five years on each assault count.

Section 18–1.3–406(7)(a), C.R.S.2003 (formerly § 16–11–309(8)(a)), provides:

In any case in which the accused is charged with a crime of violence ... and the indictment or information specifies ... the use of a semiautomatic assault weapon ... upon conviction for said crime of violence, the judge shall impose an additional sentence to the department of corrections of five years for the use of such weapon. The sentence of five years shall be in addition to the mandatory sentence imposed for the substantive offense and shall be served consecutively to any other sentence and shall not be subject to suspension or probation.

Because we conclude that defendant was convicted of four separate crimes of violence, the trial court did not err in imposing an additional sentence of five years for each crime of violence and in ordering that these five-year sentences be served consecutively.

The judgment and sentence are vacated, and the case is remanded for further proceedings consistent with this opinion.

Judge ROY and Judge STERNBERG * concur.