2013 COA 120

**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Denise Lynne PRESSON,**
**Defendant–Appellant.**

**No. 10CA0131**

Colorado Court of Appeals,
Div. IV.

August 15, 2013

As Modified on Denial of Rehearing
Sept. 26, 2013

El Paso County District Court No. 08CR5062, Honorable Theresa M. Cisneros, Judge.

John W. Suthers, Attorney General, Ryan A. Crane, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE HAWTHORNE.

¶ 1 Defendant, Denise Lynne Presson, appeals the judgment of conviction entered upon jury verdicts finding her guilty of first degree murder after deliberation and felony menacing. She also appeals her convictions for possession of a weapon by a previous offender, attempted second degree assault, and attempted escape, entered pursuant to her guilty plea. We reverse and remand for further proceedings consistent with this opinion.

## I. Factual Background

¶ 2 Defendant suspected that her sister's boyfriend, the victim, had been abusing her nephews. She asked her nephew, B.P., whether the victim was abusing him or his brother. B.P. repeatedly stated that the victim was not abusing them, assured defendant that the victim was "a good guy," and declined defendant's offer to "take him [the victim] out." However, she maintained that by looking in B.P.'s eyes and listening to his and the victim's psychic responses, she could tell that B.P. was being abused. After talking to B.P. and showing him a gun, she walked outside and fatally shot the victim. Defendant then attempted to shoot her sister, but the gun jammed. Defendant fled and was arrested later that night.

¶ 3 Defendant entered a plea of not guilty by reason of insanity, and the court ordered a sanity examination by the Colorado Mental Health Institute at Pueblo (CMHIP). In a report issued on August 24, 2009, Dr. Pounds, a CMHIP psychiatrist, opined that defendant was sane when the events occurred. He and Dr. Gray, a CMHIP psychologist who had tested her, both agreed that defendant was competent to proceed to trial and was malingering, although the court had not specifically ordered a competency evaluation.

¶ 4 On October 24, 2009, defendant sent the court a letter stating that she wanted to fire her attorneys and enter guilty pleas to all the pending felony charges. As a result, defendant's lawyers expressed to the court concerns about her competency and hired Dr. Fukutaki, a psychiatrist, to examine her. On November 6, 2009, Dr. Fukutaki evaluated defendant and concluded that she was incompetent because she suffered from psychotic thinking, which prevented her from having a rational and factual understanding of the criminal proceedings.

¶ 5 The court preliminarily found that defendant was competent. Defense counsel objected and requested an additional competency evaluation. The court ordered another evaluation, but informed defendant that she had the right to refuse to participate. When the evaluator, Dr. Bradley, went to the jail, defendant refused to meet with him, saying, "The judge said I don't have to see him." Dr. Bradley submitted a report to the court stating that while he had reviewed volumi-

nous medical and other records, he lacked sufficient information to provide an opinion concerning defendant's competency.

¶ 6 On November 30, 2009, the court held a hearing on defendant's competency. Defense counsel objected to proceeding without a complete second evaluation and requested that defendant be sent to CMHIP to complete the evaluation. However, the court proceeded and determined that defendant was competent, finding

- Defendant's reason for refusing to meet with Dr. Bradley supported a finding that she was competent;
- Dr. Fukutaki's report did not establish that she was incompetent;
- Although some of her behavior had resulted from her mental illness, she understood the proceedings, what a plea was, the charges against her, and knew who her attorneys were;
- Her understanding of legal issues remained intact, as demonstrated by her knowledge of the case;
- Her reasons for wishing to proceed pro se and plead guilty—that she was tired of being in jail and thought that she could have a better life in prison, did not want her nephew to have to testify, and hoped to prevent the victim's family from suffering additional pain—were rational; and
- Her research into Department of Corrections facilities where she would be sent after entering the plea demonstrated rational thinking.

¶ 7 Defendant then moved to represent herself, explaining that she wanted to accept an outstanding guilty plea offer on all charges. After a lengthy colloquy on the dangers of pro se representation, the court granted her motion to proceed pro se. Defendant then declared that she was "the tree of knowledge of good and evil," and told the court, without explanation, that she had decided to proceed to trial. At trial, she maintained that her theory of defense was "possession by spirits," and the jury convicted her. Later that month, she entered into a plea agreement concerning the remaining charges.

## II.  Second Competency Report

¶ 8 Defendant contends that reversal is required because Dr. Bradley's evaluation report was statutorily deficient. We agree.

¶ 9 We review statutory interpretation questions de novo. *Leyva v.People*, 184 P.3d 48, 50 (Colo.2008). Our primary task is to effectuate the legislature's intent. *Id.* We begin with the statute's plain language, giving words and phrases their commonly accepted and understood meanings. *People v. Garcia*, 113 P.3d 775, 780 (Colo.2005). If the statute is clear and unambiguous, we need not look beyond the plain language. *People v. Vigil*, 127 P.3d 916, 931 (Colo.2006).

¶ 10Section 16–8.5–105(5)(c)–(e), C.R.S. 2012, requires that a competency evaluation report include a diagnosis and prognosis of the defendant's mental or developmental disability, an opinion as to whether the defendant suffers from a mental or developmental disability, and an opinion as to whether the defendant is competent to proceed.

¶ 11 Here, Dr. Bradley's report did not contain the statutorily required diagnosis, prognosis, and opinions. Instead, the report stated that, although he had reviewed almost 1400 pages of defendant's file, he was unable to render an opinion concerning defendant's competency because she had refused to meet with him.

¶ 12 The statute does not explicitly authorize the court to proceed without receiving a complete second evaluation. Instead, it addresses a defendant's noncooperation:

The defendant shall cooperate with the competency evaluator.... If the defendant does not cooperate with the competency evaluator and other personnel providing ancillary services and the lack of cooperation is not the result of a developmental disability or a mental disability, the fact of the defendant's noncooperation with the competency evaluator and other personnel providing ancillary services may be admissible in the defendant's competency or restoration hearing to rebut any evidence introduced by the defendant with regard to the defendant's competency.

*See* § 16–8.5–105(2), C.R.S. 2012. And, rather than permitting inconclusive competency evaluations in such circumstances, the statute plainly requires an evaluator to render an opinion about a noncooperative defendant's competency based on "confessions, admissions, and any other evidence of the circumstances surrounding the commission of the offense, as well as the known medical and social history of the defendant ...." § 16–8.5–105(3), C.R.S. 2012. Additionally, the statute authorizes the court to determine the competency evaluation's location, giving priority to the place where the defendant is in custody, unless the nature and circumstances of the evaluation require designation of a different facility. § 16–8.5–105(*l* )(a), C.R.S. 2012.

¶ 13 Upon receiving an incomplete second evaluation, a court should order that (1) the evaluator render an opinion based on the available information, if possible, despite the defendant's noncooperation or (2) the defendant be returned to the appropriate facility for further observation so that a competency opinion can be rendered.

¶ 14 Here, Dr. Bradley stated that he had insufficient information from which to render an opinion, and the trial court declined to return defendant to CMHIP to complete the evaluation. Accordingly, the court erred by proceeding to determine defendant's competency without the statutorily required second evaluation.

¶ 15 The People argue that the statute does not require a second evaluation. However, the statute in effect during defendant's trial specifically required that, if a party requested a second evaluation, a completed evaluation must be filed within sixty days, unless the time period was extended by the court for good cause.[1]  Ch. 389, sec. 2, § 16–8.5–103(4), 2008 Colo. Sess. Laws 1840.

¶ 16 Having concluded that the court erred, we must determine whether reversal is required. Defendant maintains that constitutional harmless error review applies. *See Pate v. Robinson,* 383 U.S. 375, 386, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) (failure to

hold an adequate competency hearing violated the defendant's constitutional rights); *People v. Corichi,* 18 P.3d 807, 810 (Colo.App. 2000) ("[D]ue process is violated when a trial court refuses to accord an accused an adequate hearing concerning his or her competency."); *see also Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980) (disregarding the defendant's "substantial and legitimate [procedural] expectation" constituted due process violation). The People disagree, arguing that the error is of statutory, not constitutional, dimension. *See People v. Gonzales,* 56 Cal.4th 353, 154 Cal. Rptr.3d 38, 296 P.3d 945, 967 (2013) (violating a state statute does not demonstrate that the error violates the federal Constitution).

¶ 17 We need not resolve this issue because we conclude that reversal is required under either standard. *See People v. Muniz,* 190 P.3d 774, 782 (Colo.App.2008) (reversal required under constitutional harmless error or nonconstitutional harmless error).

¶ 18 Under constitutional harmless error analysis, reversal is required if there is a reasonable possibility that the defendant could have been prejudiced. *People v. Orozco,* 210 P.3d 472, 476 (Colo.App.2009) (citing *People v. Trujillo,* 114 P.3d 27, 32 (Colo. App.2004)). Nonconstitutional harmless error requires reversal if the error substantially influenced the outcome or affected the proceeding's fairness. *Salcedo v. People,* 999 P.2d 833, 841 (Colo.2000).

¶ 19 The People maintain that any error was harmless because defendant received competency evaluations from Dr. Pounds and Dr. Fukutaki. Thus, according to this argument, failing to order another complete evaluation did not contribute to the court's decision or her conviction. We disagree and conclude that the error was not harmless under either standard, for three reasons.

¶ 20 First, Dr. Pounds's evaluation was conducted in August, several months before the defense raised competency concerns and the court ordered the second evaluation in November. Significantly, the statute recognizes the necessity of obtaining a timely re-

---

1. In 2012, the statute was amended to require that the second competency evaluation be completed within sixty-three days instead of sixty. § 16–8.5–103(4), C.R.S. 2012 (eff. July 1, 2012).

port. *See* § 16–8.5–103(4). Thus, defendant was unfairly deprived of a second contemporaneous evaluation, to which she was statutorily entitled.

¶ 21 Second, in finding defendant competent, the court explicitly relied on her refusal to cooperate with Dr. Bradley in finding her competent. And Dr. Bradley stated that, because of her refusal, he had insufficient information to complete the evaluation. Thus, the lack of a complete second evaluation influenced the court's competency determination.

¶ 22 Third, defendant's statements during the competency hearing and Dr. Fukutaki's report raised doubts about her competency. Dr. Fukutaki opined that since defendant was examined by Dr. Pounds, she had ceased taking medication prescribed at CMHIP, and her behavior had decompensated significantly. Because evidence of defendant's competency was not overwhelming, reversal is required and the case is remanded for further proceedings. *See Salcedo*, 999 P.2d at 842; *Bartley v. People*, 817 P.2d 1029, 1034 (Colo. 1991).

¶ 23 We further conclude that, under these circumstances, a retrospective competency determination will not cure the error. *See Pate*, 383 U.S. at 386, 86 S.Ct. 836; *Dusky v. United States*, 362 U.S. 402, 402–03, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *People v. Matthews*, 662 P.2d 1108, 1111 (Colo.App.1983).

¶ 24 We recognize that another division of this court upheld a retrospective competency determination conducted fifteen months after trial. *Corichi*, 18 P.3d at 811. However, that case is factually distinguishable. There, defense counsel approved the trial court's decision to hold a competency hearing posttrial after the defendant raised the issue for the first time in a postconviction motion. *Id.* at 809. Here, defense counsel specifically requested the second competency evaluation before trial. Additionally, more than three-and-a-half years have elapsed since defendant's trial. And, Dr. Bradley stated that, despite having reviewed defendant's files, he had insufficient information from which to form a competency opinion. If a retrospec-

tive competency determination were ordered, defendant might or might not cooperate. But regardless, observing her now would not inform Dr. Bradley of her condition four years ago, when she went to trial. Thus, he would be forced to form an opinion from the same information that he had previously deemed insufficient. Given these circumstances, a retrospective competency determination would be inappropriate.

¶ 25 Because the trial court did not comply with section 16–8.5–105, C.R.S. 2012, in finding defendant competent, her convictions entered following the jury trial and pursuant to her guilty plea must be vacated.

¶ 26 On remand, the court shall conduct further competency proceedings, in accordance with applicable statutory procedures and this opinion, to ascertain whether defendant is properly oriented to time, place, and person, and her perceptions are rational and grounded in reality. *See People v. Mondragon*, 217 P.3d 936, 940 (Colo.App.2009). If defendant is found competent, the case shall be set for retrial, unless defendant and the prosecution enter into a plea agreement, with the court's approval. If defendant is found incompetent, the court may release her on bond and order any necessary treatment or commit her to CMHIP until she is restored to competency. *See* § 16–8.5–111(2), C.R.S. 2012.

¶ 27 Given our resolution of this issue, we need not address defendant's remaining contentions.

¶ 28 The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

JUDGE WEBB and JUDGE STERNBERG * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. 2012.