The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 9, 2026

## 2026COA25

**No. 25CA0026, *SMB Advertising, Inc. v. City of Boulder* — Government — Law Enforcement Integrity — Incident Recordings — Complaint of Police Officer Misconduct — Criminal Justice Records Act**

A division of the court of appeals addresses the interplay between the Enhance Law Enforcement Integrity Act (Integrity Act), which requires law enforcement agencies to "release, upon request, all unedited video and audio recordings . . . within twenty-one days" for "all incidents in which there is a complaint of peace officer misconduct," § 24-31-902(2)(a), C.R.S. 2025, and the Colorado Criminal Justice Records Act, which allows a criminal justice agency discretion to "assess reasonable fees . . . for the search, retrieval, and redaction of criminal justice records." § 24-72-306(1), C.R.S. 2025.

The division holds that the Integrity Act does not allow a law enforcement agency to condition its mandatory obligation to produce requested recordings on the payment of fees. And it further holds that the Integrity Act's mandates are not rendered optional by the unfunded mandate statute, section 29-1-304.5, C.R.S. 2025.

COLORADO COURT OF APPEALS     **2026COA25**

---

Court of Appeals No. 25CA0026
Boulder County District Court No. 24CV30320
Honorable Michael Kotlarczyk, Judge
Honorable Robern R. Gunning, Judge

---

SMB Advertising, Inc. d/b/a Yellow Scene Magazine,

Plaintiff-Appellee,

v.

City of Boulder, Colorado,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE DUNN
Román, C.J., and Welling, J., concur

Announced April 9, 2026

---

Grata Law and Policy LLC, Daniel D. Williams, Matthew A. Simonson, Boulder, Colorado; Hutchinson Black and Cook LLC, Ashlyn L. Hare, Boulder, Colorado, for Plaintiff-Appellee

Teresa Taylor Tate, City Attorney, Luis A. Toro, Senior Counsel, Veronique Van Gheem, Assistant City Attorney, Boulder, Colorado, for Defendant-Appellant

Killmer Lane, LLP, Madison S. Lips, Denver, Colorado, for Amicus Curiae Colorado Freedom of Information Coalition

Azizpour Donnelly LLC, Katayoun Donnelly, Denver, Colorado; Timothy R. Macdonald, Sara R. Neel, Denver, Colorado, for Amicus Curiae American Civil Liberties Union Foundation of Colorado

Rachel Bender, Robert D. Sheesley, Denver, Colorado, for Amicus Curiae Colorado Municipal League

Hall & Evans, L.L.C., Andrew D. Ringel, Denver, Colorado, for Amicus Curiae Colorado Counties, Inc.

Erin Powers, Littleton, Colorado, for Amicus Curiae County Sheriffs of Colorado

Colorado Legal Defense Group, Justin Carpenter, Denver, Colorado, for Amicus Curiae Jonathon Booth

¶ 1     In 2020, the Colorado General Assembly enacted the Enhance Law Enforcement Integrity Act (Integrity Act), which, among other reforms, requires law enforcement agencies to "release, upon request, all unedited video and audio recordings . . . within twenty-one days" for "all incidents in which there is a complaint of peace officer misconduct." § 24-31-902(2)(a), C.R.S. 2025.

¶ 2     Decades earlier, the General Assembly enacted the Colorado Criminal Justice Records Act (CCJRA), which authorizes public access to certain criminal justice records, including tapes and recordings, at the discretion of the custodian. §§ 24-72-302(4), -304(1), C.R.S. 2025. And when providing access to records under the CCJRA, a criminal justice agency "may assess reasonable fees . . . for the search, retrieval, and redaction of criminal justice records." § 24-72-306(1), C.R.S. 2025.

¶ 3     This case involves the interplay of these statutes and whether a law enforcement agency may charge fees before releasing recordings requested under the Integrity Act.

¶ 4     Plaintiff, SMB Advertising, Inc. d/b/a Yellow Scene Magazine (Yellow Scene), a community news organization, requested the Boulder Police Department to produce recordings of a police

1

incident under the Integrity Act. The police department responded that the requested recordings were criminal justice records under the CCJRA and declined to produce the recordings without first receiving payment for the costs of searching, reviewing, blurring, and producing the recordings.

¶ 5     Yellow Scene then filed this action against defendant, the City of Boulder. The district court entered declaratory relief in favor of Yellow Scene, holding that the plain language of the Integrity Act and the CCJRA does not authorize law enforcement agencies to condition compliance with the Integrity Act on the payment of fees.

¶ 6     Boulder appeals the district court's judgment. Because we conclude that the Integrity Act does not allow a law enforcement agency to condition its mandatory obligation to produce requested recordings on the payment of fees, we affirm the district court's judgment.

## I.     Background

¶ 7     In late 2023, Boulder police officers shot and killed Jeanette Alatorre. A few months later, Yellow Scene's attorney filed a police misconduct complaint regarding the incident. The attorney and Yellow Scene separately requested that "all videos" and "other

recordings" of the incident — including from body and dash cameras (collectively, the recordings) — be released within twenty-one days under section 24-31-902(2) of the Integrity Act.

¶ 8 The Boulder Police Department responded with cost estimates ranging from $1,425 to $8,484 to review and prepare the requested recordings. When asked if it would produce the recordings without payment, the police department declined.

¶ 9 Yellow Scene filed this action against Boulder, asserting claims for mandamus and declaratory relief. Jeanette Alatorre's daughter later joined the lawsuit, alleging that she too had requested recordings of the incident under the Integrity Act and that Boulder had conditioned the release of the recordings to her on the payment of fees. Alatorre's daughter sought only mandamus relief.

¶ 10 Yellow Scene and Boulder jointly requested — and the district court granted — an expedited hearing on the declaratory judgment claim.

¶ 11 After that hearing, the district court issued a thorough written order declaring relief in favor of Yellow Scene. The court ruled that the plain language of the Integrity Act and the CCJRA does not authorize the imposition of fees as a condition of producing

3

recordings requested under the Integrity Act. Though it found the statutory language plain, it added that even if the statutes were ambiguous, "interpretive aids fully support" the conclusion that compliance with a request under the Integrity Act may not be conditioned on the payment of fees.

¶ 12 The court also rejected Boulder's alternative argument that section 29-1-304.5, C.R.S. 2025 (the unfunded mandate statute), rendered "optional the [Integrity Act's] purported mandate" that law enforcement agencies provide requested recordings "free of charge." The court determined that, because the Integrity Act is not unfunded, the unfunded mandate statute doesn't apply, and even if it does, reading the Integrity Act's requirements as optional would be contrary to its plain language and intent.

¶ 13 Yellow Scene and Alatorre's daughter then moved to dismiss the remaining mandamus claim, and the court entered final judgment in favor of Yellow Scene on the declaratory relief claim.

## II. Analysis

¶ 14 Boulder maintains that law enforcement agencies have discretion under the CCJRA to charge fees before complying with their obligation to produce recordings requested under the Integrity

4

Act.  It alternatively argues that because the mandate to produce recordings requested under the Integrity Act is unfunded, law enforcement agencies may treat that mandate as optional under the unfunded mandate statute.  We aren't persuaded by either contention.

### A.  Standards of Review and Statutory Interpretation

¶ 15    Statutory interpretation presents a question of law that we review de novo.  *Nonhuman Rts. Project, Inc. v. Cheyenne Mountain Zoological Soc'y*, 2025 CO 3, ¶ 14.

¶ 16    When interpreting statutes, our primary goal is to effectuate the legislature's intent.  *Id.*  To do that, we start with the statutory language, applying its plain and ordinary meaning.  *Id.*  If the language is clear and unambiguous, we apply the statute as written without regard to interpretive aids.  *See id.*

¶ 17    If two statutes conflict, we will attempt to harmonize them to "effectuate their purposes."  *Oracle Corp. v. Dep't of Revenue*, 2017 COA 152, ¶ 34 (citation omitted), *aff'd*, 2019 CO 42.  But if they are irreconcilable, specific statutes prevail over general ones, and more recent statutes prevail over older ones.  §§ 2-4-205 to -206, C.R.S. 2025.

## B.    The Integrity Act

¶ 18    Following the deaths of George Floyd and Elijah McClain, the General Assembly passed the Integrity Act in June 2020 and amended it in 2021.  Ch. 110, secs. 1-19, 2020 Colo. Sess. Laws 445-61; Ch. 458, secs. 1-25, 2021 Colo. Sess. Laws 3054-75.  The Integrity Act requires, among other things, that all state and local law enforcement agencies provide body cameras to public-facing peace officers.  § 24-31-902(1)(a)(I).  And it contains requirements for when such officers must wear and activate their bodycams and provides penalties for not doing so.  § 24-31-902(1)(a)(II)-(IV).

¶ 19    To promote transparency in law enforcement interactions with the public, the Integrity Act also mandates the circumstances under which recordings must be disclosed:

> For all incidents in which there is a complaint of peace officer misconduct by another peace officer, a civilian, or nonprofit organization, through notice to the law enforcement agency involved in the alleged misconduct, the local law enforcement agency or the Colorado state patrol *shall release*, upon request, all unedited video and audio recordings of the incident, including those from body-worn cameras, dash cameras, or otherwise collected through investigation, to the public within twenty-one days after the local law enforcement agency or

6

the Colorado state patrol received the request
for release of the video or audio recordings.

§ 24-31-902(2)(a) (emphasis added).

¶ 20   If the recordings capture the death of an individual, section 24-31-902(2) also provides that the recordings "must" be provided to certain family members if requested and outlines their "right" to receive and review the recordings before public release.  § 24-31-902(2)(b)(I).

¶ 21   Though it mandates the release of "unedited" recordings, § 24-31-902(2)(a), the Integrity Act requires blurring of certain people or things in released video recordings "to protect the substantial privacy interest" of specified individuals, including victims, but prohibits "the removal of any portion of the video," § 24-31-902(2)(b)(II)(A).  *See also* Sec. 2, § 24-31-902, 2021 Colo. Sess. Laws at 3057 (amending subsection (2) to delete the option to redact recordings).

¶ 22   The Integrity Act does not include any provision authorizing a law enforcement agency to charge fees for the review, blurring, and production of requested recordings.

## C.    The CCJRA

¶ 23    The General Assembly passed part 3 of article 72, the CCJRA, in 1977.  §§ 24-72-301 to -309, C.R.S. 2025; Ch. 340, secs. 1-6, 1977 Colo. Sess. Laws 1244-51.  The CCJRA is one of Colorado's open government laws and specifically governs the public's access to criminal justice records.  § 24-72-301(2).  It distinguishes between two categories of records: (1) records of "official action," §§ 24-72-302(7), -303, C.R.S. 2025; and (2) "criminal justice records," §§ 24-72-302(4), -304.

¶ 24    Criminal justice records include "books, papers, cards, photographs, tapes, recordings, or other documentary materials" made, maintained, or kept by a criminal justice agency.  § 24-72-302(4).  It's undisputed that the recordings requested in this case satisfy the definition of criminal justice records.

¶ 25    Unlike records of official actions, which generally "shall be open for inspection by any person," § 24-72-303(1), criminal justice records "may be open for inspection" at the "discretion of the official custodian," § 24-72-304(1).  And the custodian may deny disclosure of a criminal justice record "if the custodian determines that a privacy interest or dangers of adverse consequences outweigh the

8

public interest." *Gazette v. Bourgerie*, 2024 CO 78, ¶ 28; *see* § 24-72-305, C.R.S. 2025.

¶ 26 If access is allowed, "[c]riminal justice agencies may assess reasonable fees, not to exceed actual costs, including but not limited to personnel and equipment, for the search, retrieval, and redaction of criminal justice records requested pursuant to this part 3 and may waive fees at their discretion." § 24-72-306(1).

### D. The Integrity Act and the CCJRA are Consistent

¶ 27 Considering the plain language of the Integrity Act and the CCJRA, we aren't persuaded that the General Assembly intended to allow a law enforcement agency to condition its compliance with the Integrity Act's disclosure requirement on the payment of fees.

### 1. The Plain Language of the Integrity Act Doesn't Authorize Fees

¶ 28 We start with the plain language of the Integrity Act, which is clear in its command that a law enforcement agency "shall" produce requested recordings after a complaint of police misconduct. § 24-31-902(2)(a). The command is clear, plain, and unconditioned on the payment of fees. *Id.*; *see also Waddell v. People*, 2020 CO 39, ¶ 16 (The "use of the word 'shall' in a statute generally indicates

[the legislature's] intent for the term to be mandatory." (alteration in original) (citation omitted)).

¶ 29 The conspicuous absence of a fee provision in the Integrity Act is telling. After all, the General Assembly knows how to include a fee provision if it intends one because the CCJRA plainly allows a criminal justice agency discretion to charge reasonable fees to review and produce criminal justice records. § 24-72-306(1); *see also* § 24-72-205, C.R.S. 2025 (authorizing fees for the retrieval and production of public records under the Colorado Open Records Act (CORA)). Because the General Assembly could have easily included a fee provision in the Integrity Act, but did not, "[t]he familiar 'easy-to-say-so-if-that-is-what-was-meant' rule of statutory interpretation has full force here." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 182 (2012) (citation omitted). And "[w]e should not construe th[is] omission[] by the General Assembly as unintentional." *Auman v. People,* 109 P.3d 647, 657 (Colo. 2005).

## 2. The Plain Language of the CCJRA's Fee Provision Is Self-Limiting

¶ 30     The plain language of the CCJRA also supports this conclusion because its fee provision is self-limiting. That is, it doesn't broadly apply to a request for criminal justice records under any statute. Rather, it allows criminal justice agencies discretion to assess reasonable fees "for the search, retrieval, and redaction of criminal justice records requested *pursuant to this part 3*." § 24-72-306(1) (emphasis added). And we must presume that the General Assembly "says in a statute what it means and means in a statute what it says there." *Snow v. People*, 2025 CO 32, ¶ 17 (quoting *People v. Weeks*, 2021 CO 75, ¶ 25; in turn quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). Because "this part 3" refers only to the CCJRA, the fee provision on its face restricts its application to those requests for criminal justice records made under the CCJRA.[1] *See People v. Campbell*, 885 P.2d 327, 329 (Colo. App. 1994) ("[W]hen a statute specifies the particular

---

[1] The Integrity Act is part 9 of a different article — namely, article 31.

11

situations in which it is to apply, it should generally be construed as excluding from its operation all other situations not specified.").

¶ 31    Boulder attempts to avoid the CCJRA's textual limitation in a few different ways. It first says we should ignore the fee provision's limitation to "this part 3" because doing otherwise would render section 24-72-306(3) meaningless. Subsection (3) states that the "provisions of this section shall not apply to discovery materials that a criminal justice agency is required to provide in a criminal case pursuant to [Crim. P. 16]." § 24-72-306(3). Boulder says if the fee provision is limited to "this part 3," there would be no need to exclude criminal discovery materials that are governed by Rule 16 and not "part 3."

¶ 32    While Boulder's argument has some superficial appeal, it overlooks that the criminal discovery exception was expressly added to address a decision by a division of this court holding that a criminal justice agency could recover "reasonable fees for discoverable materials." *People v. Trujillo*, 114 P.3d 27, 31 (Colo. App. 2004). The *Trujillo* division interpreted the CCJRA's fee provision — which at the time did not include the "pursuant to this part 3" limitation — and a prior version of Rule 16 to conclude that

12

a criminal defendant may be "assessed the cost of duplicating" discoverable materials.[2] *Id.*

¶ 33    After *Trujillo*, the General Assembly amended the CCJRA's fee provision in two relevant respects. First, the amendment limited the fee provision to criminal justice records "requested pursuant to this part 3." Ch. 134, sec. 1, § 24-72-306, 2008 Colo. Sess. Laws 428. And second, the amendment added subsection (3) to explicitly exclude from the fee provision criminal discovery produced "pursuant to [Crim. P. 16]." *Id.*; *see* Crim. P. 16(I)(a)(1). Though the exclusion of criminal discovery was implicit in the "pursuant to this part 3" limitation, subsection (3) was included to explicitly address concerns raised by the state public defender about *Trujillo*. *See* Hearings on H.B. 08-1076 before the S. Judiciary Comm., 66th Gen. Assemb., 2d Reg. Sess. (Mar. 5, 2008); *see also Benefield v. Colo. Republican Party*, 2014 CO 57, ¶ 17 ("[W]ords and even clauses in constitutions and statutes that might in some sense be redundant are often specifically included to illuminate and clarify what would otherwise be merely implicit.").

---

[2] Under the current rules of criminal procedure, "[t]he prosecution shall not charge for discovery." Crim. P. 16(V)(c)(1).

¶ 34    Because the fee provision limitation and the criminal discovery

exception were added together, post-*Trujillo*, we conclude that both

additions reflect the intent to limit the reach of the CCJRA's fee

provision to requests made for criminal justice records under the

CCJRA.  And while Boulder may be correct that this results in some

redundancy, nothing prevents the General Assembly from

"employ[ing] a belt and suspenders approach."[3]  *Atl. Richfield Co. v.*

*Christian*, 590 U.S. 1, 14 n.5 (2020); *see also Rimini St., Inc. v.*

*Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Sometimes the better

overall reading of the statute contains some redundancy.").

¶ 35    Boulder next argues that the reference to requests under "this

part 3" is "best read as specifying that the subsection applies only

to requests for criminal justice records" under CCJRA and not to

requests for "public records" under CORA, which is part 2 of

article 72.  But that makes little sense as CORA already expressly

---

[3] Although the statute's language is clear, its evolution is confirmed
by testimony before the Senate Committee on Judiciary, which
clarified that the criminal discovery exception was meant to make
the exemption for criminal discovery explicit, though the "pursuant
to this part 3" language already excluded it.  Hearings on H.B. 08-
1076 before the S. Judiciary Comm., 66th Gen. Assemb., 2d Reg.
Sess. (Mar. 5, 2008).

excludes criminal justice records from its definition of public records, which means criminal justice records can't be requested under CORA. §§ 24-72-202(6)(b)(I), -203(1)(a), C.R.S. 2025; *see Gazette*, ¶ 24. By contrast, the Integrity Act specifically authorizes requests for a subset of criminal justice records. § 24-31-902(2)(a).

¶ 36    Boulder also insists that *any* request for criminal justice records, "[r]egardless of the label . . . a requester puts on its request," is "requested pursuant to this part 3." But this interpretation simply reads the language "requested pursuant to this part 3" out of the statute, which we, of course, may not do. *See People v. Coleman*, 2018 COA 67, ¶ 51. Had the General Assembly intended for the fee provision to apply to *any* request for criminal justice records, it would not have amended the CCJRA in 2008 to expressly limit the fee provision to requests made under "this part 3" (and to make explicit that the fee provision does not apply to a

criminal justice agency's mandatory obligation to produce criminal

discovery materials).[4]

¶ 37   Because we conclude that the statutes do not conflict, to the

extent Boulder says we must read the statutes together to allow law

enforcement agencies to condition the production of recordings

requested under the Integrity Act on the payment of fees, we

disagree.  *See Lobato v. Indus. Claim Appeals Off.*, 105 P.3d 220,

224 (Colo. 2005) ("*If* statutory provisions are in conflict, we will

adopt the interpretation that best harmonizes the provisions if

possible." (emphasis added)); *see also B.G.'s, Inc. v. Gross*, 23 P.3d

691, 694 (Colo. 2001) (noting that "consideration of other statutes

---

[4] Boulder relatedly asserts that applying the plain language of the statutes makes the "application of the CCJRA contingent upon the legal authority invoked by the requester."  But the CCJRA and the Integrity Act serve different purposes, and it is the context that governs whether the Integrity Act or the CCJRA applies.  A request for recordings under the Integrity Act requires a police misconduct complaint and is directed to the law enforcement agency involved. § 24-31-902(2)(a), C.R.S. 2025.  By contrast, a request for criminal justice records under the CCJRA can be for any reason and is not limited to police misconduct.  § 24-72-304(1), C.R.S. 2025.  And an agency receiving a request for a recording will always have to make a threshold determination as to whether the request is under the Integrity Act or the CCJRA to determine, among other things, the applicable deadline for fulfilling the request and what, if any, redactions can be made.

dealing with the same subject is one type of extrinsic aid that can be useful in deciding questions of statutory interpretation," but references to extrinsic aids are unnecessary "[w]hen statutes are clear and unambiguous").

¶ 38 Finally, Boulder argues that preventing local law enforcement agencies from conditioning compliance with the Integrity Act's production requirements on the payment of fees "incentivizes" filing baseless complaints of police misconduct and encourages the potential for abuse (such as the solicitation of potential clients for a lawsuit). And it advocates for importing the CCJRA's enforcement provisions — which allow appeals of a custodian's discretionary denial of access to records — into the Integrity Act. But these are policy arguments that should be directed at the General Assembly, not this court. *See State Farm Mut. Auto. Ins. Co. v. Fisher*, 2018 CO 39, ¶ 26. Because we conclude that the Integrity Act does not condition a law enforcement agency's compliance with its obligations to produce requested recordings on the payment of fees, we must apply the Integrity Act as written. We therefore conclude that the district court did not err by entering declaratory relief in favor of Yellow Scene.

17

## E.     The Unfunded Mandate Statute

¶ 39    Boulder alternatively argues that because the General Assembly never provided funding for local governments to review, blur, and produce requested recordings, it may treat its mandatory production obligations under the Integrity Act as optional under the unfunded mandate statute.  Again, we are not persuaded.

¶ 40    In 1991, the General Assembly passed the unfunded mandate statute, which, as relevant here, provides:

> No new state mandate . . . shall be mandated
> by the general assembly . . . on any local
> government unless the state provides
> additional moneys to reimburse such local
> government for the costs of such new state
> mandate . . . .  In the event that such
> additional moneys for reimbursement are not
> provided, such mandate . . . shall be optional
> on the part of the local government.

§ 29-1-304.5(1); *see* Ch. 166, sec. 3, § 29-1-304.5, 1991 Colo. Sess. Laws 912-14.[5]  A "state mandate" is "any legal requirement established by statutory provision . . . which requires any local

---

[5] Though law enforcement agencies are not included in the definition of local government under the unfunded mandate statute, *see* § 29-1-304.5(3)(b), C.R.S. 2025, the parties don't dispute that a county or municipal agency falls within the definition.  We therefore assume, without deciding, that county and municipal agencies are subject to the statute.

government to undertake a specific activity or to provide a specific service which satisfies minimum state standards." § 29-1-304.5(3)(d).

¶ 41 As before, we interpret statutes de novo, applying the same interpretive principles. *Nonhuman Rts. Project*, ¶ 14.

¶ 42 To begin, it's unclear whether the mandate to release recordings under the Integrity Act is unfunded. Boulder and one amicus say it is. Yellow Scene and two amici say it isn't. And the district court concluded the requirement is funded to "some degree."

¶ 43 The district court reached its conclusion based on section 24-31-902(1)(a)(I) of the Integrity Act, which states, "Law enforcement agencies may seek funding pursuant to section 24-33.5-519." And section 24-33.5-519, C.R.S. 2025, created "the body-worn camera grant program . . . to award grants to law enforcement agencies to purchase body-worn cameras, for associated data retention and management costs, and to train law enforcement officers on the use of body-worn cameras." § 24-33.5-519(1)(a). The grant program is funded from "general fund moneys appropriated to the division by the general assembly" and applications for "gifts, grants, or

donations from the federal government and any public or private source." *Id.* Two million dollars was appropriated for the grant program in the 2021-2022 fiscal year. Sec. 18, § 24-33.5-519, 2021 Colo. Sess. Laws at 3069.

¶ 44 The problem is that the record is undeveloped on this point. The parties presented no evidence about the grant program. Nor did the district court make any factual findings about the grant program. Whether and to what extent the grant program included funds for producing recordings under the Integrity Act is not clear. Also unclear is whether the Boulder Police Department applied for or received any funding under the grant program and, if so, whether the use of the funding was restricted.

¶ 45 But even if we assume that the grant program doesn't apply and that the General Assembly didn't fund the mandate requiring law enforcement agencies to produce recordings requested under the Integrity Act, we don't agree with Boulder that the unfunded mandate statute trumps the Integrity Act, rendering the mandatory obligation to produce requested recordings entirely optional.

¶ 46 The opposite is true. That's because the assumed lack of funding leaves the two statutes in irreconcilable conflict. This is so

20

because the Integrity Act plainly requires disclosure of requested recordings, § 24-31-902(2)(a), while the unfunded mandate statute says that compliance is optional when such a requirement is imposed without an accompanying state appropriation, § 29-1-304.5(1).  When faced with such an impasse, the Integrity Act — the more recent and specific of the two statutes — prevails over the older and more general unfunded mandate statute.  *See* §§ 2-4-205, -206, -215, C.R.S. 2025; *see also Jenkins v. Pan. Canal Ry. Co.*, 208 P.3d 238, 241 (Colo. 2009) (recognizing the "two rules for deciding which of two irreconcilable statutes governs").

¶ 47    A division of this court reached a similar conclusion in *Gessler v. Doty*, 2012 COA 4.  In that case, a county sought to render its statutory obligations to provide certain election services optional because the mandate was not funded.  The division rejected the county's claim, concluding that the statutes were irreconcilable and that the more specific elections mandate statute trumped the unfunded mandate statute.  *Id.* at ¶¶ 18-20.

¶ 48    Though Boulder argues that the elections mandate statute considered in *Gessler* expressly assigned costs to the county, and the Integrity Act is silent on costs, that misses the point.  The

conflict is essentially the same here as it was in *Gessler*. More precisely, like the county in *Gessler*, Boulder seeks to use the general unfunded mandate statute to render optional a specific, mandatory statutory obligation. And like the *Gessler* division, we see no way to harmonize the statutes in a way to give effect to both. *Id.* at ¶ 18. Thus, the Integrity Act prevails as the more specific and recent statute. *See* §§ 2-4-205, -206.

¶ 49 And while Boulder claims that applying these interpretive principles "nullif[ies] the application of [the unfunded mandate statute] in all cases," its suggested "harmonization" is to instead nullify law enforcement agencies' mandatory obligation to produce recordings requested under the Integrity Act. But Boulder directs us to no legal authority to support its preferred interpretation, which allows a general statute enacted over thirty years ago to render a later, more specific statute optional. Nor could it because "the acts of one general assembly are not binding on future general assemblies" and "no legislation passed by one general assembly requiring an appropriation shall bind future general assemblies." § 2-4-215(1); *see Hessick v. Moynihan*, 262 P. 907, 915 (Colo. 1927) ("[O]ne [l]egislature cannot bind the hands of [its] successors.").

22

¶ 50 For all these reasons, we conclude that the unfunded mandate statute does not render the Boulder Police Department's obligation to produce recordings requested under the Integrity Act optional.

## III. Disposition

¶ 51 The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUDGE WELLING concur.